Thomson, J.,
delivered the opinion of the court.
'Mary A. Simpson, the plaintiff below, alleged in her complaint that the defendant company was a corporation organized under the laws of Colorado, for the purpose of diverting water from the Arkansas river and supplying it to the company’s stockholders for the irrigation of their lands lying under the line of the company’s ditch or canal; that the plaintiff owned a tract of land lying under the canal, and, for the purpose of obtaining water for its irrigation, on the 1st day of June, 1891, purchased from the defendant twelve shares of its capital stock, receiving a certificate of ownership of the stock, duly signed and attested, and setting forth that she was entitled to the use of 2^^ cubic feet of water per second from the canal for the purpose of irrigating her land, subject to the by-laws, rules and regulations of the company; that she thereupon caused the land to be prepared for cultivation, and prior to the 15th day of June, 1891, liad planted it in different grains; that thereafter, until the 31st day of July, 1891, she frequently demanded water from the defendant for the irrigation of her crops, but the defendant furnished none, by reason of which her crops were dried up, destroyed, and wholly lost; and that the defendant was not prevented from furnishing the water by reason of anything contained in the company’s by-laws, rules and regulations. Judgment was demanded for the damage sustained.
The defendant answered admitting plaintiff’s ownership of the land, the purchase of the stock, and the issuance of the certificate as set forth in the complaint; alleging that the water in the canal was for the sole use of the stockholders of the company, and that none was sold or otherwise disposed of for profit; that the company’s certificates of stock entitled *32 stockholders to the use of water only when it flowed in or through the ditch; and denying that the defendant ever neglected or refused to furnish plaintiff with water according to the terms of her certificate; but averring that the canal was recently constructed, and was about 80 miles in length; that plaintiff’s land was near the extreme lower end of the canal, which, although it had been carefully constructed, and was operated with diligence and care, was subject to accidents incident to new ditches; and, owing to breaks in its banks and walls, the time consumed in repairs and flooding the ditch after repairs had been made, and by reason of the distant location of plaintiff’s land, the defendant was unable to supply her with the usual amount of water during the time mentioned in the complaint. Defendant also alleged that the damage sustained by plaintiff was due to her own fault and negligence in that she delayed planting her land until after the proper time, and neglected to take out laterals from the ditch, or to use the water which it contained. There was a replication which averred, among other things, that the land was planted in proper time, that the necessary laterals were constructed, and that during the time the plaintiff was deprived of water other stockholders were freely and fully supplied. The cause was tried to a jury who returned a verdict for the plaintiff.
No proof was made of the by-laws, rules or regulations' of the company, but it was alleged and not denied that there was nothing contained in them to excuse the failure complained of. It also appears from the pleadings that the company was organized solely for the purpose of supplying water to its stockholders, who were entitled to all the water flowing in its canal.
The relation between a corporation and its members is one of contract. The members commit their property interests to the corporate body for certain express purposes which are defined in the charter or certificate of incorporation, and the corporation undertakes to faithfully carry out these purposes. This is a contract which the law implies; from it *33 arises the trust with which the corporation is charged to' conduct the common business in the interests of the shareholders ; and each share of stock, in respect of the benefits to which it entitles its holder, is equal to every other share. Clearwater v. Meredith, 1 Wall. 25, 40; Miners’ Ditch Co. v. Zellerbach, 37 Cal. 543, 591; San Diego v. R. R. Co., 44 Cal. 106, 116; Sawyer v. Hoag, 17 Wall. 610, 623; 2 Spelling on Private Corporations, sec. 550.
The defendant company having been organized to supply water for irrigating purposes to its stockholders, the interest of each stockholder in the water carried was in exact proportion to the amount of his stock;. and the duty assumed by the company was to use reasonable care and diligence in conveying the water, keeping the means of conveyance in repair, and'making a ratable distribution. The quantity of water mentioned in the plaintiff’s stock certificate as belonging to her was 2TJ?JBa- cubic, feet per second; but we suppose these figures were the result of a calculation based upon the estimated carrying capacity of the canal, and would represent the amount to which she would be entitled when that was running full; but, however this may be, she was entitled to a share of whatever water was flowing in the ditch proportioned to her interest in the company.
There was evidence tending to show that from the 20th or 25th of June to the 26th or 27th of July, 1891, there was practically no water in the ditch at the farm of plaintiff, in consequence of which her crops could not be irrigated, and were destroyed ; while, during the same time, the ditch at the farms of her neighbors, two or three miles distant, contained water which was freely used bjr them, and their crops preserved. It was also in evidence that during this period the plaintiff several times demanded water from the company, but none was furnished. The agreement of the company being to furnish the water, upon such proofs being made, it devolved upon it to explain the failure ; and this it attempted to do by .showing breaks in the ditch, the time necessarily lost in repairs and turning the water back into it, the diffi *34 culty of managing a new ditch owing to its greater liability to breaks, and the ease with which water escaped through its incompact walls; but, in view of the testimony that there was water in the ditch sufficient for irrigating purposes in close proximity to the plaintiff’s land during the time she was unablé to procure it, the sufficiency of the explanation was for the determination of the jury, and their verdict has set the question at rest.
The evidence showing the use of water b}r the plaintiff’s neighbors, and an instruction based upon it, were objected to by the defendant on the ground that the evidence tended to show discrimination against the plaintiff in the distribution of the water; that such a defense should have been pleaded; and that, not having been pleaded, the variance between the proofs and allegations were suchas to mislead the defendant. There are two answers to the objection : first, the matter was pleaded; and second, it was not necessary-to plead it. It was fully set forth in the replication, and if counsel regarded it as a departure from the cause of action stated in the complaint, the objection should have been taken before the trial, and, not having been so taken, it was waived. Kannaugh v. Quartette Mining Co., 16 Colo. 341.
But this suit is not based upon any willful discrimination against the plaintiff and in favor of the other stockholders, by reason of which she failed to receive her share, while they received an excess. Such a proceeding would involve an unfaithful administration of the trust, and would be within the jurisdiction of a court of equity. The foundation of this action is the breach by the defendant of its contract, in failing to supply the plaintiff with any water; and the evidence was admissible without being specially pleaded, in support of the general allegations of the complaint, and in answer to defendant’s claim that there was no water in the ditch from which she could be supplied.
There was evidence tending to show that the laterals were not at first properly constructed to convej^ the water from the ditch and distribute it over the land; but it was also *35 shown that about the 22d of June, new laterals were made which were correct in grade and otherwise, and it was after this that the dearth occurred. The question whether the damage sustained by the plaintiff was in any degree due to her fault or negligence, either in respect of the laterals, or any other respect, was solely for the decision of the jury, and they have settled it by their verdict.
The instructions requested by the defendant, in so far as they were proper, were embraced in the instructions given; and the latter were full and fair, except that some of them might be regarded as too favorable to the defendant. ■
The judgment will be affirmed.

Affirmed.