## G. & C. MERRIAM CO. v. SAALFIELD

### (Circuit Court of Appeals, Sixth Circuit. October 28, 1911.)

#### No. 2,097.

1. JUDGMENT (§§ 665, 714*)—JUDGMENT AS BAR—NATURE AND REQUISITES OF FORMER ADJUDICATION.

In order to constitute an estoppel by a judgment or decree in a former suit, it must have been between the same parties as those in the subsequent suit in which the former judgment is interposed as a bar, or their privies, and the subject-matter on which the former judgment rests must be the same, or, if not the same, it must have involved some point or question bearing upon the main issue and material to its decision, in which case the judgment is conclusive upon that question.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1177, 1244; Dec. Dig. §§ 665, 714.*]

2. JUDGMENT (§ 681*)—PERSONS CONCLUDED—PERSONS SUCCEEDING TO INTERESTS PENDENTE LITE.

One who took over the business of publishing certain books from another, pending a suit against the latter for infringing the trade-name of another publisher in the title of such books, was bound by the decree subsequently entered in such suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1202; Dec. Dig. § 681.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs 1907 to date, & Rep'r Indexes

3. TRADE-MARKS AND TRADE-NAMES (§ 96*) — UNFAIR COMPETITION — CONSTRUCTION OF DECREE.

    A decree enjoining the defendant from using the name "Webster" on the title page of dictionaries, unless accompanied by an explanation that the publication was not that of complainant, the original publisher of such dictionaries, and prescribing the language of such statement, while conclusive of the general equities of the parties, is not conclusive as to the precise form of statement required in another suit in a different district against one in privity with the first defendant for a different trespass; but whether or not the defendant therein infringes the rights of complainant is to be determined on the facts of the case.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 109; Dec. Dig. § 96.*

    Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

4. TRADE-MARKS AND TRADE-NAMES (§ 71*)—UNFAIR COMPETITION.

    The use by defendant of the name "Webster" in connection with dictionaries published by him, unaccompanied by a proper explanatory statement, *held* in violation of the rights of complainant, whose publication had become known to the public under that name, although its right to the exclusive use of the name had expired with the copyright.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 71.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

Suit in equity by the G. & C. Merriam Company against Arthur J. Saalfield. Decree for defendant, and complainant appeals. Reversed.

Frank F. Reed and William B. Hale (Charles N. Judson and Edward S. Rogers, on the brief), for appellant.

George F. Bean and Charles R. Miller, for appellee.

Before SEVERENS and KNAPPEN, Circuit Judges, and McCALL, District Judge.

SEVERENS, Circuit Judge. This is a suit by bill in equity, brought by the above-named complainant, the G. & C. Merriam Company, against the defendant, Saalfield, wherein the complainant alleges that for a long period of time it has been engaged in the publication and sale of a series of dictionaries, some large and comprehensive, and others abridgments thereof, all founded on the original dictionary prepared and published by Noah Webster, and severally bearing the name and title of "Webster's Dictionary." From this long use of that name in association with the name of the complainant, it is claimed that the distinctive name "Webster" has acquired a secondary meaning, and has long since come to be known, and is still known, by the public to signify the dictionaries published by the complainant. And thereupon the bill charges that the defendant is publishing and selling a parallel series of dictionaries, purporting to be Webster's dictionaries, and bearing his name prominently on the title page and backs thereof, and is advertising its publications to the public as genuine Webster's dictionaries, without any recognition of the prior right of complainant.

'And it is claimed that this action of the defendant is intended to, and in fact does, lead the public to understand that his dictionaries are the genuine Webster's dictionaries published and sold by the complainant, and that by this alleged fraudulent conduct the public is deceived and induced to purchase the defendant's dictionaries, whereby the complainant's business is greatly injured.

It appears from the record that the dictionaries of the complainant, which at the time of the commencement of this suit were being published and sold, and which are supposed to be counterfeited by the defendant's dictionaries, have been copyrighted, but that these copyrights had expired. At all events, nothing is now claimed from any infringement of copyrights, and the case is planted solely upon the charge of unfair competition in business. But the fact that they have enjoyed the exclusive privileges afforded by the copyright law is one of much importance; for after that the exclusive privilege of the publisher is gone. He has agreed that it should be, as the price of the protection he has been accorded; and it is not now to be doubted that the name of the author is part and parcel of the matter copyrighted.

The case was brought to the attention of the Circuit Court by a motion for a preliminary injunction. But at the hearing thereof the case was by stipulation of counsel submitted as upon final hearing on the pleadings and proofs; it being agreed that the affidavits already filed should be treated as depositions, and certain other specified depositions taken in a case formerly depending in the Circuit Court of the United States for the District of Massachusetts between the present complainant and one Geo. W. Ogilvie should be considered as if taken regularly in the case before the court. The case was thereupon fully heard by Judge Tayler, who presided. The bill was dismissed, the court being of opinion that the present controversy was concluded by the decree of the court in the Massachusetts case above referred to; it appearing that Saalfield was in privity with Ogilvie, who, as has been stated, was a party to the former suit, and that, as the court thought, the issues were the same as in the present case. The opinion of the court, which comes up with the transcript, indicates that the court, considering the facts to be the same as in the former suit, forbore to further consider the merits.

The case in the Massachusetts court comprehended an original bill filed by Ogilvie against the Merriam Company for the purpose of protecting its right to publish and sell a comprehensive dictionary which it was about to publish under the title of "Webster's Imperial Dictionary." It was therein complained that the Merriam Company was publicly denying the right of the complainant to publish the dictionary with that title and threatening to prosecute all persons engaged in the publication or sale thereof. The Merriam Company answered the bill, and claimed to justify its opposition to the publication of the dictionary of the complainant upon the ground that it, the Merriam Company, had acquired by long-continued use an exclusive right to the use of the word "Webster," which was the characteristic of the title of Ogilvie's dictionary, in its own publications of dictionaries, and that Ogilvie's intended use of it in his own publication would be an im-

190 F.—59

pairment of that right. By leave of the court the defendant in that suit filed a cross-bill, in which was set forth a history of its publications, in their several forms, of Webster's dictionaries having the name of "Webster" by way of distinction in their several titles, and that its predecessors in business had also acquired the good will of the business built up under that name, and claimed that by long-continued association of that name with the business of the company, as well as by the purchase of the good will from the Webster estate, it had acquired an exclusive right to use it. The cross-bill then alleged that Ogilvie had been, and then was, in various publications of dictionaries trespassing upon this right of the cross-complainant; and the relief prayed was that the cross-defendant be enjoined from using the name as descriptive of its publications, either alone or in combination with other words. To this cross-bill Ogilvie filed an answer, in which he reiterated his claim of right to use the name of "Webster," asserted in his original bill, and denied that he was transcending the proper limitations thereof, or had any purpose to do so. Thus by the pleadings of the parties substantially the whole controversy between them as it then existed was brought before the court for its determination. Upon hearing the pleadings and proofs, Judge Colt in a clear and concise opinion held that both parties were asserting claims which exceeded their respective rights—the Merriam Company in claiming an exclusive right to use the name "Webster" in connection with its publication of dictionaries and in denouncing the claim of right set up by Ogilvie to use it; and Ogilvie, although conceding his right to use it, in not taking the proper measures to explain to the public that his dictionaries were not the dictionaries of the Merriam Company. The court so held in regard to the duty of Ogilvie, because it found that the Merriam Company had for so long a time employed the name of "Webster" in association with its dictionaries that it had acquired a secondary meaning, namely, that it was a production of the Merriam Company, and that by its use without explanation the public would understand that the dictionaries published by Ogilvie and offered for sale by him were the dictionaries of the Merriam Company, which latter the public would desire to have. A decree was entered in conformity with these conclusions. Ogilvie v. G. & C. Merriam Co. (C. C.) 149 Fed. 858. An injunction was ordered, but in terms which, as the Court of Appeals for that circuit held, was not sufficiently specific to define the duty of the cross-defendant. The Merriam Company appealed from the Circuit Court's decree. The Circuit Court of Appeals confirmed the rulings of Judge Colt upon the law and facts, but, for the reason that the injunction ordered was thought not to be sufficiently specific, reversed the decree and remanded the case for the entry of a decree such as the Court of Appeals thought would better fit the circumstances of the case. G. & C. Merriam Co. v. Ogilvie, 159 Fed. 638, 16 L. R. A. (N. S.) 549. From the decree entered by the Circuit Court on receiving the mandate, the Merriam Company again appealed, insisting that the following words should be ordered by the injunction to be made unmistak-

ably to appear in the title-page of every volume of the class of dictionaries to which that litigation related, namely:

"This dictionary is not published by the original publishers of Webster's Dictionary or by their successors."

This amendment was sanctioned by the Circuit Court of Appeals, and the case was remanded for the entry of a final decree. 170 Fed. 167, 95 C. C. A. 423. Thereupon the following decree (omitting formal and irrelevant parts) was entered in the Circuit Court:

"That a perpetual injunction issue in this suit, restraining the defendant, the G. & C. Merriam Company, its officers, agents, attorneys, and servants, and all others claiming or holding through or under it, from publishing or issuing circulars, advertisements, or notices stating in form or effect, or in any manner claiming, that it, the defendant, or any other person, firm, or corporation claiming under or through it, has exclusive right to the use of the name 'Webster' in the title of dictionaries.

"That a perpetual injunction issue in this suit, restraining the cross-defendant, George W. Ogilvie, his agents, attorneys, servants, employés, and all persons claiming or holding through or under him, from using as the name or title of his said dictionaries described in the amended cross-bill herein, to which this litigation relates, the words 'Webster's Dictionary,' or 'Webster's Imperial Dictionary,' or 'Webster's Universal Dictionary,' or any equivalent thereto, upon the title-page, or upon the back or cover of said dictionaries, or in any advertisement, circular, notice, or announcement referring to said dictionaries, unless accompanied by the following statement, plainly printed upon the title-page, and in each said advertisement, circular, notice, or announcement, namely: 'This dictionary is not published by the original publishers of Webster's Dictionary, or by their successors'—and especially from publishing or issuing in their present form the title-pages and backs of his said dictionaries and the circulars and advertisements in this suit adjudged misleading or deceptive, or in any other form of title-page, back, circular, or advertisement that is in any way calculated to deceive purchasers into purchasing complainant's dictionary under the belief that it is a Webster's dictionary published by the G. & C. Merriam Company."

A petition for a writ of certiorari to the Supreme Court of the United States was filed by the Merriam Company, but the petition was denied. The foregoing final decree of the Circuit Court is the one which Judge Tayler held conclusive of the present controversy.

[1] In order to constitute an estoppel by a judgment or decree in a former suit, the following conditions must exist: The former suit must have been between the same parties (or their privies) as those in the subsequent suit in which the former judgment is interposed as a bar, and the subject-matter on which the former judgment rests must be the same, or, if not the same, it must have involved some point or question bearing upon the main issue and material to its decision, in which case the judgment is conclusive upon that question. We need only to cite the two leading English and American decisions: The Dutchess of Kingston's Case, 2 Smith's Lead. Cas. 424, and Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

[2] Guided by this rule, we proceed to consider whether the former judgment is binding upon the parties to this suit, and, if so, to what extent and upon what questions it is binding. It is contended by counsel for the complainant that the parties are not the same, nor privies to those parties, because Saalfield was not a party to the former suit, and so not bound by the judgment, and, as estoppels must be mutual,

the complainant is not bound. Let us refer to the facts. The suit in Massachusetts was commenced on August 9, 1904. The cross-bill was filed September 20th of the same year. The answer to the cross-bill was filed January 9, 1905. Replication to the answers to the bill and cross-bill were filed as early as February, 1905. Judge Colt's decision was filed January 9, 1907, and his decree, so far as it determined the rights of the parties, was affirmed by the Circuit Court of Appeals on January 30, 1908. In May, 1908, the defendant Saalfield "took over" the business of publishing the dictionaries from Ogilvie. The final decree was entered April 21, 1909. What was the precise nature of the contract between him and Ogilvie does not appear, and Saalfield refuses to disclose it. The court might well presume, if need be, that the contract was only of an agency and did not transfer a substantial right. But it is not material. The case was already pending, and the whole controversy had been submitted for the judgment of the court. Though not a party, Saalfield was bound by the final decree of the court. If a third party may thus come into the acquisition of rights involved in pending litigation without being bound by the final judgment, and require a suit de novo in order to bind him, he might, pending that suit, alienate that right to another with the same result, and a final decree bearing fruit could never be reached.

[3] The remaining question is one of more difficulty. We think it clear that the decree of the Circuit Court in Massachusetts concluded the general equities of the parties. It determined that the Merriam Company had not an exclusive right to use the name "Webster" in the publication of their dictionaries; that the defendant, Ogilvie, in common with the public generally, had the right to use it in connection with its publications, but upon the condition that its use should be accompanied by an explanation that the publication was not that of the Merriam Company, which, the court determined, had previously acquired the right to use as designating its own publications. But the difficulty comes in assenting to the claim that the judgment is conclusive in respect to the particular conduct of the parties required in that case for the future in order to perpetuate the enjoyment of the rights of the parties, for we more than doubt that that was of the essence of the court's decree. It is difficult to believe that the court meant to decide that the precise explanation that the defendant was required to make in using the name, and no other, should always be used. We are inclined to think that the language of the decree in this particular should be construed as meaning that the particular explanation required would exonerate the defendant from liability for using the name in association with his dictionaries. If this be so, it must follow that in the present case, which is founded upon other transactions and trespasses than those involved in the former case, the question whether the alleged conduct of the defendant is in violation of rights of the complainant is an open one, and must be determined upon its own facts, and not upon the assumption that they are to be judged of merely by comparison with the requirements of the decree in the Massachusetts case.

It is not to be implied from what we have said that we regard the

terms of the injunction ordered by the Circuit Court of Appeals for the First Circuit as an unreasonable or unjust limitation of the defendant's rights. On the contrary, we should be quite willing to adopt it, if the facts of this case should seem to call for it. The decisions of the Supreme Court in the cases of Singer Company v. June Company, 163 U. S. 169. 16 Sup. Ct. 1002, 41 L. Ed. 118, and Herring Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, amply justify the provisions of such an order. Moreover, the courts of this circuit have no authority to superintend the enforcement of the decree in the First circuit. That province belongs exclusively to the court which pronounced the decree. An independent suit was necessary to be instituted in this circuit, if the rights of the complainant required an injunction for protection against wrongful acts committed here.

[4] On looking into the pleadings and evidence in the record before us, we are convinced that at the time when the suit was commenced the defendant in his advertisements, his publications, and sales of his dictionaries, was not observing his limitations. It seems to us that he studiously disregarded them. He constantly made use of the name "Webster" to promote his trade, and in doing so did not unmistakably indicate that his publications were not the publications of the well-known Webster's dictionaries published by the complainant. His references to other dictionaries were obscure. They might start a supercritical purchaser upon inquiry; but the general public would be likely to assume that a dictionary offered them, having the title "Webster's Dictionary," was the dictionary published by the old and well-known publishers of Webster's dictionaries, and accept the book with that tacit understanding. The defendant's constant abstention from all reference to the complainant is indicative of a purpose not to direct the attention of buyers to the fact that his own publications were not the publications they were looking for.

The averment of his answer that his publications are in conformity with the decision of the court in Massachusetts is too general. It gives no date from and after which he so conformed, and it is proven that at the time when the bill was filed he was not doing so. Moreover, the averment amounts to a mere conclusion of his own, and furnishes no data upon which the court can judge whether his opinion is correct or not. In response to an interrogatory attached to the bill, the defendant appends to his answer copies of his business advertisements and circulars to the trade, to which he refers as indicating his observance of the requirements of the Massachusetts injunction. But an inspection of them fails to show any purpose to do this. On the contrary, they show, by what they contain and what they omit to state, a purpose to keep in obscurity what his duty was to make plain. Copies of pictures of the defendant's dictionaries are shown in some of these advertisements and circulars; but only the lettering on the back and the outside of the front covers is displayed, and in this the name "Webster" is prominent, but there is no hint to distinguish the book from the original Webster's or its successors. We can only conjecture what appeared on the title-page. In short, we cannot doubt

that the defendant has, since the Massachusetts decree was pronounced, not merely neglected to make clear that his dictionaries were not in the line of the original publication of Webster's dictionaries and its successors, but has purposely attempted to mislead the public into the belief that his publications were legitimate successors in the line of the publications of the well-known Merriam Company, with which the general public associated the name of "Webster."

With respect to the matter of an accounting, the case is beset with the same difficulties that were present in the Massachusetts case, and were alluded to by Judge Putnam in the final opinion of that case, and for the present we shall make no order in that regard. This, however, we will do without prejudice to a motion for rehearing in that behalf, if the complainant is advised to make such an application.

The decree of the court below must be reversed, with costs, and a decree for the complainant should be entered, awarding an injunction such as indicated by this opinion. For the sake of conformity, we will direct the form of the injunction to be entered to be that awarded at the final decree in the First circuit, copied in the foregoing opinion.

KNAPPEN, Circuit Judge. I concur in the foregoing opinion of Judge SEVERENS upon the construction thereof that what is there said regarding the defendant's failure to conform to the limitations imposed upon him is confined to the situation existing at the time of the filing of the bill in the case before this court (which was December 26, 1908), and which situation continued until after the final decree and injunction in the Massachusetts case (which were made and issued April 21, 1909), at some time after which date the defendant changed the title-pages and inscriptions of his new issues of dictionaries, as well as of his new advertising matter, for the apparent purpose of conforming to the injunction in the Massachusetts case. I think defendant's liability is to be tested by reference to the requirements of that final decree and injunction.