Carmen MARIA SANTIAGO et al.,
Plaintiffs, Appellants,

v.

CORPORACION de RENOVACION UR-BANA Y VIVIENDA de PUERTO RICO et al., Defendants, Appellees.

Carmen MARIA SANTIAGO et al.,
Plaintiffs, Appellees,

v.

CORPORACION de RENOVACION UR-BANA Y VIVIENDA de PUERTO RICO et al., Defendants, Appellants.

Nos. 76–1294, 76–1295.

United States Court of Appeals,
First Circuit.

Argued Feb. 9, 1977.

Decided May 18, 1977.

Maria Dolores Fernos, Hato Rey, P. R., with whom Pedro J. Varela, Hato Rey, P. R., Sonia A. Rodriguez, Luis A. Suarez Zayas, and Pedro J. Saade Llorens, Hato Rey, P. R., were on brief, for Carmen Maria Santiago, et al.

Candita R. Orlandi, Asst. Sol. Gen., Dept. of Justice, with whom Roberto Armstrong, Jr., Acting Sol. Gen., San Juan, P. R., was on brief, for Corporacion de Renovacion Urbana y Vivienda de Puerto Rico, et al.

Before COFFIN, Chief Judge, VAN OOSTERHOUT * and INGRAHAM **, Circuit Judges.

COFFIN, Chief Judge.

The defendants in this case are Corporacion de Renovacion Urbana y Vivienda de Puerto Rico (CRUV) and several officials who administer CRUV. CRUV is a public body created by the Commonwealth of Puerto Rico to construct and maintain low and moderate income housing. The plaintiffs are persons seeking public housing. They brought suit for declaratory and injunctive relief, alleging that CRUV's treatment of public housing applicants violated due process and equal protection, as well as the laws and regulations governing federally funded public housing. Their claim for relief was based on 42 U.S.C. § 1983 and the federal housing laws, 42 U.S.C. §§ 1437 et seq. Jurisdiction was founded on 28 U.S.C. § 1343. After several years of preliminary maneuvering, plaintiffs and defendants stipulated to a disposition of the suit that heavily favored the plaintiffs. Three days later, however, CRUV moved to dismiss, arguing that it was not a "person" within the meaning of 42 U.S.C. § 1983.[1] The district court held that CRUV could be sued, and judgment was entered against all defendants. The appeal argues that CRUV should not be subject to the decree.[2]

To prevail, CRUV must establish that it is not a person under § 1983. The notion that certain government bodies are not persons stems from *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). *See also City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). By exempting cities from liability under § 1983, the *Monroe* Court showed a reluctance to put federal courts into direct conflict with local governments.

The scope of the immunity is not yet fully mapped. *See Monell v. Department of Social Services*, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977) (granting cert. to decide if local officials and school boards

---

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

1. Title 42 U.S.C. § 1983 provides:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Because of our disposition of the case on another ground, we have no occasion to decide whether the defendant's earlier stipulation forecloses this challenge. *Cf. Osborne v. United States*, 351 F.2d 111, 120 (8th Cir. 1965).

are "persons").[3] Whether it should extend to CRUV is a troubling question. CRUV is associated with the Commonwealth of Puerto Rico, not with a city, county, or other local government. Moreover, CRUV is, to some extent, financially independent of the Commonwealth. *See* 17 L.P.R.A. § 45a (power to issue $225,000,000 in bonds); 17 L.P.R.A. §§ 40, 90 (authority to collect rents to cover administrative and debt-servicing expenses).

■ However interesting the question raised by CRUV may be, this is not a case in which it must be answered. CRUV was not the only defendant below; its officers were also sued and an order was entered against them. This aspect of the decree has not been challenged on appeal. CRUV can only act through its officers. If they are properly bound by the court's order, CRUV would also seem to be bound, in fact if not in name. If all that turns on this appeal is whether CRUV's name may appear on the list of defendants, the policies surrounding article III counsel against investing scarce judicial resources in so meaningless a dispute. Federal courts sit to decide actual cases and controversies, not to render advisory opinions on academic questions. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Accordingly, we must first decide whether the district court properly enjoined CRUV's officers and whether the injunction against them effectively binds CRUV.

■ Where only injunctive relief is at issue, it may seem odd to separate a government's immunity from that of its officers. After all, it might be argued, someone suing a government officer in his official capacity is "really" suing the government. Putting the question this way, however, obscures the balancing of interests that characterizes this area of the law. Sovereign immunity is a limit on the courts' ability to interfere in the functioning of

government, but it is limited in turn by the deepseated belief that not even government may flout the law. This tension has been resolved by a fiction—an officer disobeying the law may be enjoined even when his government may not. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Although the courts have sometimes strayed from a frank recognition of this fiction as an expression of underlying principles, the principles have been strongly reaffirmed of late. In dealing with state immunity from suit, the Supreme Court has substituted a simple rule for more metaphysical inquiries into when a suit against an officer is "really" a suit against the state. When state officers are sued, the Court held, federal courts may grant prospective but not retrospective relief. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The line drawn by the Court represents a compromise between the impulse to preserve state autonomy and the need to enforce federal law. Injunctions are necessary to assure the supremacy of national law; damage awards are not. Like considerations led Congress to draw a similar line in suits against the federal government; it has clarified the murky area of federal sovereign immunity by permitting injunctive actions directly against the government. Pub.L. 94–574 (1976) (amending 5 U.S.C. §§ 702–03).

■ We think that the same tension which shaped federal sovereign immunity and eleventh amendment doctrine is shaping the immunity bestowed by *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Although the Supreme Court has not ruled, the circuit decisions are falling into a pattern very like the one that governs eleventh amendment cases: while many government entities are immune from suit under § 1983, their officials, even when sued in an official capacity, do not

---

**3.** Contrary to plaintiffs' contention the Supreme Court did not resolve the issue favorably to them in *Examining Board of Engineers, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). Although the opinion refers to the Board as an

appellant, it never discusses an issue which is, at most, peripheral. Members of the Board were also defendants and any relief granted could be fully implemented by the judgment against them and their successors. *See* our discussion of Fed.R.Civ.P. 25(d), *infra*.

share the immunity, at least when only injunctive relief is sought. *See e. g., McMillan v. Board of Educ.*, 430 F.2d 1145 (2d Cir. 1970); *Rochester v. White*, 503 F.2d 263 (3d Cir. 1974); *Harper v. Kloster*, 486 F.2d 1134 (4th Cir. 1973); *Fitzgerald v. Porter Mem. Hosp.*, 523 F.2d 716, *cert. denied*, 425 U.S. 916, 96 S.Ct. 1518, 47 L.Ed.2d 768 (1976) (Stevens, J.); *Ybarra v. Los Altos Hills*, 503 F.2d 250 (9th Cir. 1974). We reaffirm our earlier decision to follow these cases. *See Gay Students Organization v. Bonner*, 509 F.2d 652 (1st Cir. 1974).

■ We also conclude that an order naming only CRUV's officers would be just as binding on CRUV as the present order. This is true even though the particular officers named in the order may at some time be replaced by others. If officers sued in an official capacity leave office during the pendency of an action, their successors are automatically substituted. Fed.R.Civ.P. 25(d). Once an injunction is entered, those who succeed the named parties succeed as well to the duties imposed on their predecessor by decree; any other result would undermine the strong policy in favor of enforcing federal law, a policy that originally impelled the courts to create the fictional distinction between officer and government. *See Lucy v. Adams*, 224 F.Supp. 79 (N.D.Ala.1963), *aff'd*, 328 F.2d 892 (5th Cir. 1964); *see also* Fed.R.Civ.P. 65(d); *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972). Only prospective relief was granted in this case. Thus the defendants will be bound as tightly by the judgment below whether they "win" this appeal or lose it. In these circumstances, we need not decide the question they urge upon us. *Cf. W. W. Windle Co. v. Commissioner*, 550 F.2d 43 (1 Cir. 1977).

*Affirmed.*